[No. F009626. Fifth Dist. Nov. 21, 1988.]

In re NATHAN W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
NATHAN W., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II and IV.

**COUNSEL**

Houghton Gifford, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael Weinberger and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

WOOLPERT, Acting P. J.—Appellant Nathan W. appeals the judgment making him a ward of the juvenile court. The court had previously sustained the allegations of a Welfare and Institutions Code[1] section 602 petition charging appellant with driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)) and driving while having a blood-alcohol level of .10 percent or more (Veh. Code, § 23152, subd. (b)).

## FACTS

At approximately 9:45 p.m., on April 30, 1987, two Merced County deputy sheriffs were on patrol in Los Banos when they saw a pickup truck on the shoulder of the road. The truck appeared to have been involved in an accident. As the patrol car stopped in front of the pickup the deputies saw appellant stepping out of the driver's side of the truck. They approached appellant and attempted to find out what had happened and whether there was anyone with him. Appellant was incoherent and very uncooperative. He answered to the effect, "We were coming back from the fair." The deputies, however, found no other person in the vicinity of the truck. They called for the California Highway Patrol (CHP).

CHP Officer Samra arrived soon thereafter. When he approached appellant, Samra detected an odor of alcohol. The officer administered a series of field sobriety tests to appellant and then arrested him on suspicion of driving under the influence.

The CHP officer took appellant to a local emergency room where his blood was drawn. An analysis of appellant's blood sample showed a blood-alcohol concentration of .14 percent.

Appellant testified on his own behalf. He did not remember much of what had happened after 4 p.m. on April 30th. He did not recall drinking or driving, nor did he recall the accident. After the accident, he remembered sitting in the middle of the truck's bench seat and noticing the rear window was gone.

Friends of appellant who had been with him earlier that day at a local fair testified they did not see him drink. There was also evidence of appellant's good reputation in his school and the community.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

DISCUSSION

I., II.*

· · · · · · · · · · · · · · · · · · · · · ·

### III. QUESTION OF DETRIMENT.

■ Appellant claims the court's disposition order was erroneous because the court removed him from his parents' custody. While it found his welfare required his custody be taken from his parents, he argues the court committed reversible error when it failed to find under California Rules of Court, rule 1372(b)(3),[2] continued parental custody would be detrimental to the minor.

Appellant's argument is flawed. The court did not remove appellant from his parents' physical custody. Thus, the court did not err by failing to make express findings.

If, at a disposition hearing the minor is adjudged a ward of the court, the juvenile court may limit parental control and, in so doing, determine the minor's placement. As the court observed in *In re Wayne J.* (1979) 97 Cal.App.3d 776, 780 [159 Cal.Rptr. 106]: "One of the purposes of the Juvenile Court Law is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will best serve his welfare and 'preserve and strengthen the minor's family ties.' (§ 202, Welf. & Inst. Code[.])[ ] Thus with this in mind, a comprehensive statutory scheme was devised to best provide for the placement and treatment of juveniles."

Placement ranges from the least restrictive, the home of the parent, to the extreme of commitment to the Youth Authority. (See § 726 et seq.) In order to take a minor from the *physical* custody of a parent, however, the juvenile court must find *one* of the following facts: "(a) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor.

"(b) That the minor has been tried on probation in such custody and has failed to reform.

---

* See footnote, *ante,* page 1496.

[2] All references to rules are to the California Rules of Court unless otherwise indicated.

"(c) That the welfare of the minor requires that his custody be taken from his parent or guardian." (§ 726.)

When the court determines the minor's welfare requires physical custody be taken from the parent or guardian, rule 1372(b)(3)[3] requires the additional finding, based on *In re B.G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244], that continued custody by the parent or guardian would be detrimental to the minor.

Because the court placed him in the care, custody and control of the Merced County probation officer for placement in the home of his parents, appellant appears to argue he was taken from his parents' physical custody. This is not so. In choosing the least restrictive placement and leaving the minor in the parental home on probation as was done in this case, the juvenile court does not take the minor away from a parent's physical custody. Instead, the minor remains home on probation in his parents' physical custody.

The custody awarded by the juvenile court to the Merced County Probation Department is the minor's *legal* custody. Thus there is no need for a court finding of detriment, much less that the minor's welfare requires his "custody" be taken from his parent or guardian. To do otherwise is illogical. It would defy reason for a court to find parental custody would be detrimental to the minor and nevertheless order the child home on probation. More importantly, ordering a minor home on probation does not violate the parental preference doctrine which was so important to the Supreme Court in *In re B.G., supra,* 11 Cal.3d at pages 698-699. The parent-child bond is not broken by home placement.

Notably, the case law cited by the parties on whether an express finding of detriment was required involved out-of-home commitments, not at-home placements. (See *In re Cindy E.* (1978) 83 Cal.App.3d 393 [147 Cal.Rptr. 812]; *In re Kenneth H.* (1983) 33 Cal.3d 616 [189 Cal.Rptr. 867, 659 P.2d 1156].)

---

[3] Rule 1372(b)(3) provides: "(b) If the minor is adjudged a ward of the court, the court may limit the control to be exercised over the minor by any parent or guardian and shall by its order clearly and specifically set forth all of those limitations. If notice was previously given under rule 1310(a), and the court orders that a parent or guardian retain physical custody of the minor subject to the supervision of the probation officer, the parent or guardian may be required to participate with the minor in a counseling program. No ward shall be taken from the physical custody of a parent or guardian unless the court finds one of the following:

". . . . . . . . . . . . . . . . . .

"(3) That continued custody by the parent or guardian would be detrimental to the minor and the welfare of the minor requires that custody be taken from the parent or guardian."

Appellant's misconception is understandable, however, given the court's disposition order. Immediately after the juvenile court placed the minor in his parents' home, it stated: "For the purpose of any confinement or out of home placement ordered herein, the minor will be found to be a person described by section 726(c) of the Welfare & Institutions Code in that the welfare of the minor requires that his custody be taken from his parent or guardian."

Other than the fact that this was one of the probation officer's recommendations, it is unclear why the court made this statement, particularly since the court did not order confinement or out-of-home placement. Again following the probation officer's recommendations, the court ordered: "You'll attend and complete the Intoxicated Drivers Education and Assessment Program and enroll in said program within 20 days after this court hearing. You and/or your parents are to pay the program fees as determined by the program officials. You'll be confined in juvenile hall for 20 consecutive days suspended on the condition that you attend and complete the alcohol counseling program.

"You'll report to the Probation Department's juvenile work program director for a work program assignment not to exceed five total days. You'll follow the instructions of the program director and you'll satisfactorily complete the program.

"You'll be confined in juvenile hall for seven consecutive days suspended to be used at the rate of 24 hours in juvenile hall for every day that you fail to complete the juvenile work program . . . ."

However, these orders did not amount to confinement. What the court apparently intended was to impose a specified amount of time in custody and stay enforcement of the orders subject to subsequent violation of a probation condition. (§ 777, subd. (e).) The probation officer's pro forma recommendation confused "suspended," as used in the adult criminal system, with "stay," which is the procedure used in juvenile court proceedings. (*Ibid.*)

■ By imposing time but staying enforcement subject to a probation violation, the court does not need a supplemental petition in case of a probation violation. In that situation, the juvenile court may modify its previous order and remove a minor from the parents' physical custody to a county institution for up to 30 days. (§ 777, subd. (e).) However, because the court must find the minor has violated a condition of probation under section 777, subdivision (e), such a finding satisfies the requirement in section 726 for a finding to authorize taking the minor from a parent's

physical custody. Specifically, a finding of a probation violation satisfies section 726, subdivision (b), which permits removing a minor from parental physical custody when a court finds the minor has been tried on probation in such custody and has failed to reform. (*In re Robert M.* (1985) 163 Cal.App.3d 812, 819 [209 Cal.Rptr. 657].)

Thus, to the extent the juvenile court may have believed it had to make a section 726, subdivision (c), finding in order to make more real—or easily carried out—the threat of custody time if appellant did not complete the alcohol counseling program and the juvenile work program, such a belief was misplaced. Proceeding under section 777, subdivision (e), would be required irrespective of the anticipatory finding. In any event, the juvenile court did not err by failing to make a detriment finding.

IV.*

. . . . . . . . . . . . . . . . . . . . .

## V. Disposition

The matter is remanded to the juvenile court for further proceedings consistent with the views expressed herein.[4] In all other respects the judgment is affirmed.

Best, J., and Stone (W. A.), J., concurred.

A petition for a rehearing was denied December 9, 1988, and appellant's petition for review by the Supreme Court was denied March 1, 1989.

---

* See footnote, *ante,* page 1496.
[4] The unpublished portion of this opinion includes conditions of probation which require the remand.