[No. F021431. Fifth Dist. Nov. 29, 1994.]

In re CHAD S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHAD S., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Donna L. Hall, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, and Wanda Hill Rouzan, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—Chad S., a minor, was adjudged a ward of the court pursuant to Welfare and Institutions Code section 602.[1] A supplemental petition was filed (§§ 602 and 777). At the dispositional hearing, the court committed Chad to the California Youth Authority (CYA); the court granted a stay of the CYA commitment. Several months later, a further petition was filed. At this dispositional hearing, the court committed Chad to CYA, relying in part on the previous order staying the commitment to CYA. Chad appeals, claiming the court failed to consider dispositional alternatives, there was insufficient evidence of probable benefit to Chad from CYA commitment, and the court erred in considering the stayed CYA commitment as a reason to send Chad to CYA. We affirm, denying each of these claims; the published portion of our discussion concerns the last of these contentions.

### BACKGROUND

On May 4, 1992, a section 602 petition was filed against Chad in San Luis Obispo County, alleging he had threatened a public officer. Chad was granted probation with certain conditions. The case was transferred to Kern County, where Chad's mother resided. Kern County accepted the transfer and imposed conditions on Chad's probation. The conditions included that Chad was to participate in drug counseling.

A supplemental section 777, subdivision (a) petition, dated September 8, 1992, alleged Chad had violated probation; the petition was found true. In particular, Chad had engaged in assault and battery, breaking and entering, drug use and out-of-control behavior. Chad was committed to Camp Erwin Owen.

On May 17, 1993, a section 777 supplemental petition was filed alleging Chad was in violation of his probation, having engaged in drug use, curfew

---

[1]All future code references are to the Welfare and Institutions Code unless otherwise noted.

violations, out-of-control behavior and noncompliance with probation orders. The allegations were admitted. The court found that previous orders had been ineffective in Chad's rehabilitation. Chad was ordered detained in juvenile hall for 45 days and ordered to complete 90 school days in the juvenile court day school.

Another petition was filed on July 26, 1993, alleging that Chad was a minor within the meaning of section 602 because he had committed grand theft by stealing a firearm from his mother. Chad admitted the allegations. The court found that local programs had been ineffective in Chad's rehabilitation. The court committed Chad to CYA, stayed the commitment, and ordered Chad to remain in juvenile hall for 90 days. Chad was ordered to attend school regularly; all prior orders remained in effect. Restitution was also ordered.

On March 7, 1994, a section 602/777 petition was filed alleging that Chad had committed grand theft by taking a ring and currency from his mother. In addition, it was alleged that Chad was in violation of his probation and previous dispositions had been ineffective in his rehabilitation. Chad admitted the charges. The court found that Chad had failed to reform on probation and previous orders of the court had been ineffective in his rehabilitation. The court committed Chad to CYA.

DISCUSSION

I.

*Consideration of Stayed CYA Commitment*

The juvenile court here relied on the previously stayed commitment to CYA as a reason to commit Chad to CYA on the present petition.

■ Chad contends it was improper for the trial court to consider the previously stayed commitment as a reason to send him to CYA. Chad's argument is based on the theory that a stay of commitment to CYA is unauthorized because such a stay is a determination of a dispositional issue in advance of the dispositional hearing. Chad asserts that the court's almost exclusive reliance on the effect of the stayed commitment requires that the dispositional order be reversed.

The question of whether a juvenile commitment may be stayed has been the subject of several recent appellate court decisions.

The case of *In re Ronnie P.* (1992) 10 Cal.App.4th 1079 [12 Cal.Rptr.2d 875] from the First District, Division Two, is the starting point of the recent

string of cases. In *Ronnie P.* the court ordered a suspended CYA commitment at a dispositional hearing. A supplemental section 777 petition was filed, and Ronnie was committed to CYA. (10 Cal.App.4th at pp. 1082-1083.) The appellate court found insufficient evidence to warrant jurisdiction under section 777. (10 Cal.App.4th at p. 1083.) In dicta, the appellate court discussed whether the trial court abused its discretion in committing Ronnie to CYA because it relied on the previous dispositional order imposing a suspended CYA commitment. (*Id.* at p. 1086.)

The appellate court found it was error for the trial court to rely on a previously suspended or stayed commitment. The trial court's comment was, " 'I told him that if he ran, he's going to go to the Youth Authority. So he's going to the Youth Authority. That's just the way it works.' " (*In re Ronnie P., supra,* 10 Cal.App.4th at p. 1088, fn. omitted.)

Addressing the question of whether juvenile court law authorizes the staying of a CYA commitment, the appellate court commented: "This practice has been codified at section 777, subdivision (e), which permits the court to enforce, upon a violation of 'a condition or conditions of probation,' a 'stayed' order for confinement in a county institution for up to 30 days. The expression of this narrow authorization implies the exclusion of any broader authority for 'stayed' dispositions, under the doctrine of *'expressio unius est exclusio alterius.'* [Citation.]" (*In re Ronnie P., supra,* 10 Cal.App.4th at p. 1087.)

The appellate court also found that a trial court may not "forego a thorough review of dispositional considerations in favor of a previously 'stayed' Youth Authority commitment." (*In re Ronnie P., supra,* 10 Cal.App.4th at p. 1087.) The appellate court reasoned that self-executing or automatic penalties run counter to the objectives of the juvenile law and disregard the particular considerations required to be reviewed each time a ward comes before the court. (*Id.* at pp. 1087-1088.)

Although the *Ronnie P.* court found no place for a stayed CYA commitment in the juvenile court scheme, it recognized the value of such an order. "Of course, the threat of Youth Authority commitment may have a salutary effect on a particular minor's attitude, and nothing said here should be understood to restrict the court's ability to employ such a threat to encourage the minor's reform. Further, a minor's failure to heed such a warning may be taken as some evidence of resistance to rehabilitation. Aside from these purposes and effects, however, such a warning can have no legal bearing on a subsequent dispositional proceeding. Certainly it cannot operate to foreclose the imposition or continuation of a less restrictive placement." (*In re Ronnie P., supra,* 10 Cal.App.4th at p. 1090, fn. 8.)

*In re Babak S.* (1993) 18 Cal.App.4th 1077 [22 Cal.Rptr.2d 893], by the Sixth District Court of Appeal, agreed with and relied on *In re Ronnie P.* when it found the juvenile court erroneously utilized an unauthorized sentence, a suspended CYA commitment, as a reason when it ordered Babak S. committed to CYA. The appellate court in *Babak S.* did not analyze the *Ronnie P.* holding. (18 Cal.App.4th at pp. 1090-1091.)

The First District Court of Appeal, Division One, agreed in part and disagreed in part with *Ronnie P.* in the case of *In re Kazuo G.* (1994) 22 Cal.App.4th 1 [27 Cal.Rptr.2d 155]. In *Kazuo G.*, the juvenile court suspended a six-month commitment to a county institution. After the filing of a supplemental petition, the juvenile court committed Kazuo to the Boys Ranch for six months. Kazuo contended the juvenile court erred in automatically imposing the previously stayed commitment to the Boys Ranch without a complete reassessment of his current circumstances. (*Id.* at p. 4.) The appellate court agreed with *Ronnie P.* that the imposition of a previous stay may not be automatically lifted and the disposition chosen must be based on a reassessment of the circumstances. (*Id.* at pp. 4-6.) The appellate court in *Kazuo G.* disagreed with the dicta in *Ronnie P.* limiting the authority of a juvenile court to stay a commitment when it places a minor on probation.

"In *In re Ricardo M.* [(1975)] 52 Cal.App.3d 744 [125 Cal.Rptr. 291], the court held that section 730 authorizes confinement to juvenile hall as a condition of probation: 'Its purpose is to demonstrate to the minor the road to which continuation of delinquency will lead. . . .' [Citation.] For the same reason, the Supreme Court has upheld a *stay* of juvenile hall commitment as a condition of probation: '[T]he court could reasonably conclude that . . . the threat of further confinement if he again violated the conditions of probation would serve as a deterrent to delinquent behavior.' [Citation.]

". . . . . . . . . . . . . . . . . . . . . . . . .

"We reiterate our agreement with *Ronnie P.* that a prior stay of a juvenile commitment may not be automatically lifted at a subsequent dispositional proceeding, but we find the Supreme Court's holding in *In re Lance W., supra,* controlling. A juvenile commitment may be imposed and stayed when probation is granted—to serve as a warning to the minor where his continued delinquency will lead." (*In re Kazuo G., supra,* 22 Cal.App.4th at pp. 8-9.)

The appellate court also found that subdivision (e) of section 777 does not limit the juvenile court's authority to impose and stay a longer commitment; it is merely an exception to the requirement of a supplemental petition. The exception applies if the commitment is for 30 days or less. (*In re Kazuo G., supra,* 22 Cal.App.4th at pp. 8-10.)

The appellate court summarized its conclusions as follows: "There is nothing in the statute to limit the juvenile court's authority to stay a commitment to a juvenile institution for more than 30 days *when probation is granted*. The statute comes into play when a condition of probation has been violated: it limits the court's authority to lift the stay and enforce the order of commitment. If the commitment is for more than 30 days, the exception created by subdivision (e) will not apply and the procedural requirements of section 777 must be followed: a supplemental petition must be filed and a hearing held. [Citation.] And the court may not impose the commitment automatically; it must reassess the dispositional issues in light of then-prevailing circumstances. [Citation.] As long as those requirements are met, however, we find nothing to preclude the juvenile court from modifying the disposition to impose the previously stayed commitment." (*In re Kazuo G.*, *supra*, 22 Cal.App.4th at pp. 10-11.)

The most recent published authority is *In re Domanic B.* (1994) 23 Cal.App.4th 366 [28 Cal.Rptr.2d 439], from the First District, Division Five. The appellate court agreed with the analysis in *In re Kazuo G.* and held "that a juvenile court may impose a stayed or suspended CYA commitment, provided the general procedural requirements of Welfare and Institutions Code section 777, the filing of the supplemental petition and a noticed hearing thereon, are followed before the stay is lifted." (23 Cal.App.4th at p. 367.) The appellate court in *Domanic B.* emphasized that a "suspended or stayed term functions as an important part of the rehabilitative process, as a probationary or conditional term." (*Id.* at p. 373.) A suspended commitment may serve rehabilitative purposes by deterring further criminal acts.

Based on *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744] and pertinent discussions contained in the above cases, a juvenile court should have available a tool which it can utilize to serve as a warning to the minor where his continued delinquency will lead. A "stayed commitment" serves this purpose. Section 777 authorizes a "stayed" commitment. It provides in pertinent part: "(e) The filing of a supplemental petition and the hearing thereon shall not be required for the commitment of a minor to a county institution for a period of 30 days or less pursuant to an original or a previous order imposing a specified time in custody and staying the enforcement of the order subject to subsequent violation of a condition or conditions of probation, provided that in order to make the commitment, the court finds at a hearing that the minor has violated a condition of probation."

■ Thus, a stayed term of confinement in juvenile cases ordered by a court upon granting probation is generally valid unless lifting of the stay is automatic upon violation of probation. As discussed in the above cases,

before the court can impose the "stayed" commitment, the requirements of section 777 must be met. When the court evaluates the minor after a section 777 petition is filed, it must make required findings that the previous disposition has not been effective in the rehabilitation or protection of the minor (§ 777) and, if the court chooses a CYA commitment, the court must be "fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited" by commitment to CYA. (§ 734.) The juvenile court must determine the best manner in which to facilitate the rehabilitation of the minor.

A stayed commitment in the juvenile court system is different from what one normally associates with the term "stayed." Unlike adult probationers who may choose to reject probation and accept incarceration, no such choice is offered a juvenile offender on probation. (*In re Tyrell J.* (1994) 8 Cal.4th 68, 82 [32 Cal.Rptr.2d 33, 876 P.2d 519].) There is, with limited exceptions, but one choice to be made by the juvenile court, and in order to make a new choice the appropriate procedures must be followed.

Although the court is limited to only one disposition, the juvenile court should not be prohibited from warning a minor, in forceful terms, that should he violate the terms of his probation he is likely headed for CYA.

 A stay of a commitment in the juvenile court system is to be understood and applied within the structure of that unique system. It is a warning tool aimed at rehabilitation and is authorized as long as all procedures are followed and appropriate findings considered and made when lifting the stay. It cannot be automatic or self-executing.

The instant case is an excellent example of the proper utilization of a stayed commitment in the juvenile court system.

At the dispositional hearing on August 10, 1993, the trial court imposed a CYA commitment and then stayed the commitment. At the dispositional hearing on April 8, 1994, based on the filing of a new section 602/777 petition, the trial court committed Chad to CYA. Chad testified at the hearing that he now had a change in attitude and was ready to reform. The court's reasoning for imposing a CYA commitment referred to the previous stayed CYA commitment. In particular, the trial court stated: "I am looking back here in this particular matter of the fact that there has been a California Youth Authority commitment. The fact that commitment was stayed does not make it any less a commitment. At the time that the minor was previously committed, and I am not looking at that and saying that because he was committed to the California Youth Authority, and it was stayed and

now he has committed another violation that he should automatically be committed to the California Youth Authority, that is not the Court's analysis here. The Court's analysis here is that in fact, that does not get the minor's attention with regard to a change of attitude with regard to conduct after that particular proceeding. This Court is left with a serious question of credibility concerning what he may be saying about his attitude at this particular time. You don't stay a California Youth Authority commitment and give a minor another chance based on local programs, unless the minor is giving you some indication that he is going to turn from the conduct that brought him to this court to begin with. That is a serious commitment, one that the court does not take lightly and a stay of that commitment is of even greater gravity to the Court and the minor was committed to 90 days in the Juvenile Court proceeding or in Juvenile Hall. We then have a situation where the minor is released, and the same on going problems after his release have occurred after the 90 days, even though the minor should know there was a Youth Authority stay with regard to his conduct. It does not mean that his successful completion of the 90 days in the Hall necessarily negates the fact that he was committed to the Youth Authority and that commitment was stayed. Again, the analyses of this particular court is not that because he was previously committed he should automatically be committed, but what is bring [sic] presented to me at this particular point is that there is a possibility that local programs are going to be successful here because of the change of attitude, and the court has a difficult time believing that there is going to be a change of attitude when that is obviously the same purpose for which the Youth Authority stay was made in the first instance, of the last dispositional proceeding."

The juvenile court here did not treat Chad's violation of probation as requiring an automatic lifting of the stay on the previous commitment. It considered the stay as a warning to the minor where his conduct was leading. Chad's failure to heed the warning indicated he had not taken his rehabilitation and warnings regarding future conduct seriously. It demonstrates there had been no change in attitude by the minor.

The juvenile court properly relied in part on the previously stayed CYA commitment when it imposed a CYA commitment here.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 607.

## DISPOSITION

The judgment is affirmed.

Thaxter, J., and Harris, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 16, 1995.